WILSON VANCE, AN INFANT, *etc.*
BY ALBERT VANCE, HIS NEXT FRIEND

*v.*

LOGAN WILLIAMSON BUS COMPANY

(No. 9948)

Submitted February 3, 1948. Decided March 16, 1948.

*Robert Bland* and *C. A. Joyce,* for plaintiff in error.

*J. E. Wilkinson* and *Houston A. Smith,* for defendant in error.

Fox, Judge:

This is an action at law instituted by Wilson Vance, an infant, who sues by his next friend, against Logan-Williamson Bus Company, a corporation, in which recovery of damages is sought for an injury sustained by the plaintiff, allegedly occurring through negligent operation of a passenger bus owned by the defendant. To a judgment of eight thousand dollars in favor of the plaintiff, based on a jury verdict for that amount, the defendant, after its motion to set aside said verdict and grant to it a new trial was overruled, prosecutes this writ of error.

The accident in which plaintiff's injuries were sustained occurred on the 22nd day of December, 1944, on State Route No.. 10 near Ferrellsburg, in Lincoln County. The defendant's bus was traveling east in the direction of the City of Logan, and about 4:30 o'clock in the afternoon reached Ferrellsburg. A number of young people, ranging in age from twelve to eighteen years, were engaged in a snow-ball battle, occupying positions on both sides of the highway and the railway right-of-way which paralleled the highway at that point. While these persons were engaged in this battle, the bus owned by the defendant, and operated by one of its drivers, struck the plaintiff while he stood on the highway causing injuries which will be hereinafter stated and discussed.

Thirteen witnesses testified on some phase of this accident. Lowell Dial aged twelve years, Norman Dial aged fourteen years, Glen Ray Dial aged sixteen years, and one Everett Mullens, an adult, each testified that at the time of the accident the plaintiff was standing on the left side of the highway; and Norris Fowler aged seventeen years, while he did not see the plaintiff before the accident, testified that he saw his body on the left side of the highway after the accident. The plaintiff testified that at the time he was struck he was standing on the left side of the highway, on the paved portion thereof, about two or three feet from the left berm. He also testified "just before I got crippled, you know, I crossed from the right hand

side to the left hand side of the road, and was standing there" and "I was on the right hand side when I was snowballing". He also testified that he was on the right side of the road, prior to the accident, and crossed the road at a time when the bus was not in view, and stopped on the left side of the paved highway about two or three feet from the left berm, looking in the direction the bus was traveling.

On the other hand, A. W. Smith and his wife, who were in an automobile following about 100 feet behind the defendant's bus, both state that they saw the plaintiff on the right side of the highway, and saw him move from that point across the highway where he was struck by the bus. This statement is corroborated by the testimony of Tressie Mae Marshall, who sat on the right side of the bus, and near the front, Frances Dixon, and Mandy Mills, passengers in the bus, seated on the right side of the bus but on the rear seat, and by Josiah Workman, a passenger in the bus, and who was seated in the right hand front seat of the bus, and in a position where there could be no question as to his being able to see what happened. These statements are also supported by the testimony of Glen Hutchinson, the driver of the bus, who testified that the plaintiff came from the right side of the road and ran in front of the bus, at a time when it was impossible to avoid striking him. The great weight of the testimony is that the bus was traveling at a speed of from fifteen to twenty or twenty-five miles per hour. There is conflict in the evidence as to whether the driver of the bus gave a warning signal by blowing a horn or otherwise. One witness, Nathaniel Thomas Pruit, testified that the plaintiff was on the left side of the highway, and that the bus was being operated on the right side thereof, which, accepting his statement as true, would make it difficult to arrive at a conclusion that the plaintiff was struck at all, were it not for the physical fact that he was struck and severely injured.

It is obvious that upon this state of the evidence two questions of paramount importance are presented: (1)

was the defendant guilty of primary negligence; and (2) assuming primary negligence, was the plaintiff guilty of contributory negligence barring recovery.

We think the evidence shows that the bus was being operated at a reasonable speed, but the driver of a motor vehicle is always required to gauge the speed of his vehicle in the light of circumstances existing which he could observe, or should have observed. If these young boys were engaged in a snow battle, in circumstances which might indicate that they were more or less, to the knowledge of the operator of the bus, oblivious of their surroundings, his duty to exercise care to avoid injury to them is obvious. Not only should he have given warning of the approach of the bus, but he should have reduced the speed of the bus so that it could be kept within control. But merely traveling on the left side of the highway is not, necessarily, negligence. No provision of our statute requires motor vehicles to travel on the right side of the road in all instances. Code, 17-8-3, requires that "slow moving vehicles shall at all times be operated as close to the right hand side of the highway as practicable"; Section 4 of the same article requires "an operator meeting another vehicle coming from the opposite direction on the same highway shall turn to the right of the center of the highway so as to pass without interference"; and Section 5 of the same article provides that "an operator of a vehicle overtaking another vehicle going in the same direction and desiring to pass the same, shall pass to the left of the vehicle so overtaken * * *"; thus plainly recognizing the right of a driver of such vehicle to operate the same on the left side of a highway under certain conditions. When no vehicles are approaching from the opposite direction, the operator of a motor vehicle may operate the same on either the right or the left side of the road, or in the middle, and in the case at bar there is no evidence that any vehicle was approaching from the opposite direction from that in which the defendant's bus was traveling. On this point it was stated in *State* v. *Lawson*, 128 W. Va. 136, 36 S. E. (2d) 26, that "a motorist is

not in all circumstances precluded from using the left side of the highway"; and in that case the cases of *Ewing* v. *Chapman,* 91 W. Va. 641, 114 S. E. 158, and *Parks* v. *Tillis,* 112 W. Va. 295, 164 S. E. 797, were cited in support of that proposition.

On the question of the alleged contributory negligence of the plaintiff, which, of course, assumes primary negligence on the part of the defendant, it is clear that if we accept as true the statements of the witnesses, on behalf of the defendant, that the plaintiff ran in front of the bus from the right side of the road, then he was guilty of contributory negligence. A person may not enter upon a road in the path of an oncoming vehicle and recover any damages for injuries which follow as the proximate result of his action; and before entering upon the road he is required to look so that he may observe whether a vehicle is approaching; nor can he safely stand upon the highway, even on the left hand side thereof, on the assumption that a bus or other motor vehicle will not pass on that side of the road, although, of course, if he is on any portion of the highway the operator of a vehicle must take ordinary care not to injure him.

But the evidence on all of these points is in sharp conflict. The jury found in favor of the plaintiff and we do not think we would be justified in invading the province of a jury and hold that, on the evidence presented, the verdict returned, on the question of liability, should be set aside as contrary to the law and the evidence. The testimony of the witnesses offered by the defendant, while persuasive on the question of what actually occurred, did not, in our opinion, reach the dignity or force required to overcome, as a matter of law, the testimony offered by the plaintiff, so as to justify a directed verdict in favor of the defendant. We will not further discuss the evidence, because in view of the course the case must take, there will, no doubt, be a second trial in which the evidence may be different than that now being considered.

The third question as presented in the case is whether the amount of the verdict of the jury is excessive. That

the plaintiff was severely injured can not be doubted. He testified that he suffered a broken leg, that "it was broken three times, the doctor said"; that his side was hurt; his ankle mashed and bruised, but that no ankle bones were broken; and that he was in good health and good physical condition at the time he was injured, and since the injury his leg had caused him to suffer pain, and still affected him so that he could hardly walk. At the trial he exhibited to the jury where his leg was injured. No medical testimony was introduced, the excuse for this omission being that the testimony of the doctor who waited on plaintiff in the hospital could not be obtained. The only other testimony as to his injuries was that of his father, who stated that the plaintiff was able before the injury to do good work on the farm; that since the injury he had worked a little but not much; and that he complained of his back and his legs. Following his injury, the plantiff was sent to the Logan General Hospital, where he remained some three weeks when he was released, but afterwards returned for another week. So far as the record discloses his leg fracture has been successfully reduced. On this testimony the jury returned a verdict of eight thousand dollars.

We think that the amount of the verdict was not warranted by the evidence. Under the evidence presented, no one can correctly appraise the extent of the plaintiff's injuries. Of course, liability of the defendant being assumed, plaintiff was entitled to a verdict for a reasonable amount, and we express no opinion as to what that amount should be, because we have no sufficient proof of the nature, extent and probable result of the injuries sustained, and, besides, that is a jury question. What we stress is that the burden was on the plaintiff to present to the jury some reasonable evidence on the extent of plaintiff's injuries, and their probable consequences. The fracture appearing to have been effectually reduced, the remaining symptoms may or may not be the result of the injuries sustained. Only competent medical authorities can determine that question. The injured boy was eighteen years of age at the time of his injury, and has the benefit

of youth and vigor different from that existing in older persons. Conceivably, the injuries he sustained are permanent in nature, and, upon proper proof being forthcoming, may justify a substantial verdict; but we can not approve a verdict such as is now before us on the testimony presented, because it is clearly based on speculation and conjecture, with almost total absence of any evidence on which a verdict fair to both litigants could be based. It would be useless to cite cases bearing upon what courts and juries have done in awarding damages in personal injury cases. There is little consistency in the action of juries, and very little more in decisions of courts on the question; the circumstances of each case control; but in all cases there must be some reasonable and established basis for the awarding of damages, and that is lacking here. On the evidence presented, the plaintiff may have been entitled to an award of damages, but not in the sum found by the jury.

We, therefore, reverse the judgment of the Circuit Court of Lincoln County, set aside the verdict of the jury · in its entirety, and remand the case for a new trial.

*Reversed and remanded.*