DENVER P. WATSON, JR., *etc.*

*v.*

RAYMON A. WOODALL, *et al.*

(No. 10247)

Submitted Sept. 26, 1950.   Decided Oct. 24, 1950.

*J. E. Wilkinson, John E. Jenkins, Jackson, Kelly, Mor-*
*·rison & Moxley, R. G. Kelly, W. T. O'Farrell,* for plaintiffs
in error.

*R. G. Lilly, Lilly & Lilly, Cecil B. Dean,* for defendants
in error.

Fox, JUDGE:

This is an action to recover damages for injuries sus-
tained by the infant plaintiff by being struck by an au-
tomobile owned by the defendant Emery L. Woodall, and
driven by the defendant, Raymon A. Woodall, while en-
gaged in the business of the owner. The accident occurred
on April 25, 1947, at the intersection of State Routes Nos.
10 and 3, in Lincoln County. The plaintiff, at the date of
the injury, was between six and seven years of age.

The declaration in the action was filed on January 31,
1948, and a trial of the case began on March 31, 1948. At
that time motion against the declaration was made on the
ground that the date of the accident was not alleged

therein. Plaintiff, over the objection of the defendants, was allowed to amend the declaration by inserting said date, and a motion to continue the trial to the succeeding term was, we think, properly overruled. A trial before a jury resulted in a verdict in favor of the plaintiff in the sum of $15,000.00. At the conclusion of the plaintiff's evidence, the defendants moved the court to strike the evidence, and direct a verdict in their favor, on the ground that no actionable negligence had been proved. This motion was overruled, but the defendants then proceeded to introduce evidence, and, of course, waived the benefit of the motion to strike aforesaid. At the conclusion of all of the evidence in the case, the defendants moved the court to direct a verdict in their favor, which motion was overruled, and the case was permitted to go to the jury with the result stated above. Thereupon, the defendants made a motion for judgment *non-abstante veredicto,* and also made a motion that, in the event the first motion was overruled, the verdict be set aside and the defendants granted a new trial, and assigned grounds in writing at the time, which motion the court took time to consider. On May 19, 1949, an order was entered in the case overruling the motion to set aside the verdict of the jury, and judgment was entered thereon. To this ruling of the court, defendants excepted at the time. No grounds were assigned in support of the motion to render judgment for the defendants *non-obstante verdicto,* and there was no ruling thereon. On January 16, 1950, we granted this appeal.

State Route No. 10 runs from Huntington, West Virginia, in an easterly direction to West Hamlin, in Lincoln County, and then on to Logan. At a point west of West Hamlin, State Route No. 3 intersects State Route No. 10, and leads from the intersection to Hamlin, the county seat of Lincoln County. The evidence in the case indicates that the point of the intersection the road widens to some extent, and that by reason of travel in various directions there is a point in the center of the intersection on which gravel sometimes collects. The plaintiff was

struck at or near the point of this gravel which is nearest the route leading to Hamlin, which shows that he was near the center of the intersection at the time he was injured. On either side of the point of the accident the highway was approximately twenty feet in width, leading to the contention of the plaintiff that the driver of the automobile which caused the injury could have escaped inflicting the injury by turning to the right or to the left.

The accident occurred in this manner: A man by the name of Ramie, a distant relative of plaintiff, and who testified that he was seventy-eight years old, had driven a truck from the vicinity of West Hamlin in the direction of the intersection, and had with him the young plaintiff. When he reached the intersection, or very close thereto, he parked his truck on the right berm of the road he was traveling in the direction of the intersection, he says about twelve feet from the paved portion thereof. He then alighted from the truck and started across the highway or intersection in the direction of a store on the opposite side, leaving the plaintiff in the truck. At this instant, the driver of the Woodall' automobile, Raymon A. Woodall, was coming down Route 3 from Hamlin in the direction of the intersection. Ramie stopped on the paved portion of the highway some two steps from the right edge of the highway, considering the direction in which the Woodall' automobile was traveling, and being observed there, Woodall blew his horn, applied his brakes, and he says he turned slightly to the left in order to escape injury to Ramie. At this instant the young plaintiff came running across the highway from the left, and was not seen, and the evidence shows could not have been seen, by Woodall until he was on the paved portion of the highway. The plaintiff ran near to the center of the intersection, where the gravel had accumulated, and fell down, and on arising, instead of going forward in the direction in which he was going when he fell, seems to have backed to the left four or five steps, and into the path of the oncoming automobile driven by Woodall. Woodall, in an effort to avoid striking the child, had turned still

further to the left and as a result of the combined acts of Woodall and the child, the child was struck. He says that he first saw the plaintiff when he ran across the road in front of his automobile when he was about ten to fifteen feet from him, and that he, Woodall, was then traveling at a rate of from twelve to fifteen miles per hour. He says that he first applied his brakes when he first saw Ramie, and later after the impact loosened them to prevent his automobile from skidding, and to prevent more serious injury to the plaintiff.

It appears that no one actually saw the accident except Raymon A. Woodall and Hallie Ray. Hallie Ray was introduced as a witness on behalf of the plaintiff. He testified that Mr. Ramie got out of his truck and started across the highway and that the child was left behind; that after Ramie alighted from the truck the child also got out of the rear end of the truck and walked to the edge of the pavement and then started to run pretty fast; that he came out towards the center of the road and near the center of the intersection and slipped and fell on his knees, and that he was then directly in the path of the Woodall' automobile; that Woodall steered his car a little to the left, and when asked whether when the child got directly in the path of the automobile and slipped and fell on the highway it would have been possible for Woodall to have stopped the car, Ray answered: "Well, I couldn't hardly say about that." When asked: "It was a very short distance?", he testified that he thought the Woodall' automobile was some ten or fifteen feet away from the child when he first saw it, and that Woodall had blown his horn three times. He was then asked this question on cross examination: "Now, the direction that this truck was parked in this highway there in the curve of the road, it would have been impossible for Mr. Woodall to have seen this child in the back of the truck, wouldn't it?", to which he answered: "Oh, yes." He was then asked: "And he couldn't have seen him until he started out in the highway, the angle the road was, and coming in the direction he was, could he?", to which he answered: "No. He

possibly couldn't see him until he was ready to get on the concrete, the shape the road is." He was then asked: "And that is when he started running?", to which he answered: "Yes, sir, he started—". He was then asked: "In other words, Mr. Woodall couldn't have seen the boy, from the angle of the road and the shape the road was in until the boy started running into the highway?", to which he answered: "I don't expect he could, from the angle he was coming in and the way the road is, I don't imagine he could have seen him."

One Curry Graham, a taxi cab driver, was introduced by the defendants. He testified that he was coming down Route No. 3 in the direction of the intersection, and that he was from one hundred to one hundred and fifty feet back of the Woodall' automobile. He says he did not see the accident. He testified that there were several cars parked on the side of the road from which the child came, but he does not indicate the number of such cars. He testified that the first time he saw the plaintiff was when he was running across the road. He next saw the plaintiff after he had been struck and immediately after the Woodall' automobile had passed over him. It is apparent that the Woodall' automobile obscured his view of the accident.

As will be observed, there is little conflict in the evidence. When Ramie parked his truck on the berm of the highway, he left the child in the truck and started walking across the paved portion of the highway in the direction of a store on the opposite side. He stopped in the pathway of the oncoming Woodall' automobile which was coming down Route No. 3, apparently intending to keep to its right and on down Route No. 10 in the direction of Huntington. When Ramie stopped on the highway, the driver of the Woodall' automobile blew his horn to warn him and turned his automobile slightly to the left. It is clear from the testimony of both Raymon A. Woodall and Graham that at this moment the plaintiff came running across the road and into the path of the Woodall' automobile as it had been turned to the left.

Plaintiff fell down and when he arose he probably backed up and changed his position; at any rate Woodall turned his automobile still further to the left and struck the plaintiff. He testified positively that it was impossible, in the circumstances, for him to avoid striking plaintiff, and on this point he is not contradicted by any witness, nor, we think, do the surroundings tend to contradict his statement. It is clear from the testimony of plaintiff's own witness, Ray, that Woodall could not have seen the plaintiff until he was at the edge of the paved portion of the highway, and, therefore, the distance from the highway to the point where Ramie parked the truck is unimportant. It is argued, and it is undoubtedly true, that had the driver of the Woodall's automobile sufficient distance to turn his automobile either to the right or to the left, the injury to the child might have been avoided; but Woodall testifies that in the short distance in which he had to handle his automobile, it was impossible to avoid striking plaintiff. Considering all of the testimony, and the surrounding circumstances, the Court is of the opinion that plaintiff has failed to establish any actionable negligence on the part of the defendants; and that the motion of the defendants to direct a verdict in their favor, made at the conclusion of all of the testimony in the case, should have been sustained.

The defendants offered four instructions which are not involved on this writ of error. The plaintiff offered two instructions, the first of which reads as follows:

"The court instructs the jury that the driver of an automobile must increase his vigilance and care to avoid danger to a child whom he sees, or by the exercise of reasonable care should see, on or near the highway. You are therefore instructed that if you believe from a preponderance of the evidence in this case that the defendant, Raymon A. Woodall, as he approached the place of the accident, saw, or by the exercise of reasonable care should have seen, plaintiff on or near the highway for a sufficient distance to enable him to avoid striking the plaintiff if he should get in the way of the automobile being driven by the

said Raymon A. Woodall, the said Raymon A. Woodall should have approached said point expecting that the plaintiff might get in the way of said automobile, and under such circumstances the said defendant, Raymon A. Woodall, should have operated said* automobile so as to keep it under such control as would permit him to keep from striking the plaintiff in the event he did run across the road immediately in front of said automobile, and if you believe from a preponderance of the evidence in this case that the said Raymon A. Woodall failed to exercise such care and caution and that as a proximate result thereof plaintiff was injured, you should find for the plaintiff."

It is evident that the theory of this instruction is based upon the holding of this Court in *Aliff* v. *Berryman,* 111 W. Va. 103, 160 S. E. 864. In that case it was held:

"A driver is not bound to anticipate that a child will suddenly dart from the side of the street, but, if at a designated place there is anything to challenge his attention and warn him that he should expect heedless acts, it is his duty to avoid, if possible, an accident."

Undoubtedly, the quoted instruction correctly states the law, but we do not think it is applicable to the case before us. According to the undisputed evidence, there was nothing whatever to cause the driver of the Woodall' automobile to anticipate that the plaintiff would suddenly dart from the side of the road and onto the highway. The testimony of Ray is that the child could not have been seen by Woodall before it entered upon the paved portion of the highway, and the testimony of Raymon A. Woodall is that he did not see the child until it came onto the road. If he did not see, and could not, by the exercise of reasonable diligence, have seen the child until it came onto the paved portion of the highway, then clearly *Aliff* v. *Berryman, supra,* does not here apply. We are supported in this view by the case of *McCune* v. *Crawley Transportation Co.,* 120 W. Va. 301, 198 S. E. 516. That was a case where the driver of an automobile saw a group of children on the side of the highway, but off

the paved portion thereof, for a distance of at least two hundred and fifty feet. One of these children was of almost adult size, and it was held, in effect, that the driver of the automobile had the right to assume that these children would remain on the side of the highway, in a place of safety, and not enter upon the road. A young child did break away from its companions and attempt to cross the road and was injured, and recovery was denied. In that case, the Court recognized the doctrine of *Aliff* v. *Berryman, supra,* but held:

> "Where a child six and one-half years old, accompanied by older children, suddenly darts from a place of safety at the side of the street into the front of or the side of a passing motor truck and is injured; and the evidence shows that the driver of the truck had an unobstructed view of the group of children of which the injured child was a part, for at least 250 feet; the giving of an instruction which told the jury that the driver should have approached the point of accident expecting that the injured child might run across in front of his truck, was, under the circumstances, reversible error."

Plaintiff's Instruction No. 1 was based upon the theory, and could only be justified on the theory, that Raymon A. Woodall saw, or by the exercise of reasonable care should have seen, the plaintiff on or near the highway for a sufficient distance to enable him to avoid striking him, if he should get in the way of the automobile driven by Woodall. There is no evidence in the case which justifies the giving of this instruction. There is no evidence that Woodall saw, or, by the exercise of reasonable diligence, could have seen the plaintiff until he was running on the highway, and at a time when it is claimed by Woodall that it was impossible for him to prevent striking him. If the evidence tended to show that Woodall saw, or by the exercise of reasonable care should have seen, the plaintiff near the highway, it was then, under the doctrine of *Aliff* v. *Berryman, supra,* Woodall's duty to keep his automobile in complete control because, as is well known, the actions of a child cannot be predicted, and the

law recognizes that heedless and irresponsible acts on the part of children must be taken into consideration by those who travel our highways. We think plaintiff's Instruction No. 1 should not have been given because there was no evidence on which it could be based.

The court gave plaintiff's Instruction No. 2 which reads:

> "The Court further instructs the jury that a driver may not be negligent and then invoke the doctrine of sudden emergency to relieve himself from liability to another who is injured as a result of such negligence. You are therefore instructed that even though you may believe that the plaintiff ran in front of or in the path of the automobile operated by Raymon A. Woodall and thereby created a sudden emergency, yet if you further believe from a preponderance of the evidence in this case that the said Raymon A. Woodall, as he approached and reached the point of the accident, was guilty of negligence which caused or directly and proximately contributed to such sudden emergency and the resulting injury to the plaintiff, you should find for the plaintiff."

A valid objection to this instruction is that the evidence does not show that Raymon A. Woodall was guilty of such negligence as would bar him from asserting that the injury was created by a sudden emergency not caused by his own negligence. Here, we think it clear that the sudden emergency was created by plaintiff running across the highway in the path of the Woodall' automobile, and not negligence on the part of Woodall. When this emergency arose it became the duty of Woodall to avoid injury to the plaintiff if that was possible. The instruction is based upon the theory that Woodall was negligent, and that negligence was not shown. Specific objections having been made to plaintiff's Instructions Nos. 1 and 2, both should have been refused.

Plaintiff in error asserts that the verdict of the jury and the judgment entered thereon should have been set aside because of its amount. This Court is reluctant to disturb the verdict of a jury on the questions of the com-

pensation to which a plaintiff is entitled for personal injuries, but we cannot permit this judgment to stand, and, if there were no other grounds, the case would have to be reversed on the ground of excessiveness alone. The plaintiff was painfully injured, and part of the injuries are permanent in nature. The principle injury is to his right knee, where there is a five degree deficiency in the extension of the leg and some loosening laterally. In addition to this, there is a scar which will no doubt be permanent. He was injured in his left knee, but he has apparently recovered therefrom, and it does not constitute a permanent injury. He was scarred and lacerated about the face which, according to the testimony of his mother, shows up at times when he is angry or emotionally upset. The testimony of his teacher in the public schools is that he suffers to some extent from the injuries, and does not play with the other children as he was accustomed to do before the injury. He does not limp, and the testimony indicates that, while he may not engage in rough exercise or rough games, he walks around with ease as if the accident had not occurred. The medical testimony in the case is that he has reached the maximum of his recovery, and that further surgery is not indicated. Plaintiff was allowed to show by Dr. Brown that the injury to the right knee makes the plaintiff more susceptible to the development of arthritis than had the knee not been injured. But he also states that he could not say that plaintiff would ever be subjected to arthritis as the result of his injury. On the whole, according to medical testimony of the one physician who was introduced as a witness on that point, his permanent injuries are confined to the five degree limitation of the extension of his right leg, the loosening of the right knee muscles which causes more than the normal lateral use of the knee, and the statement that he might be more susceptible to the future development of arthritis than if the accident had not occurred. The plaintiff was in a hospital for some three weeks, and there was, of course, a certain amount of pain and suffering, all of which we have considered; but taking into account everything

shown by the testimony in this case, it wholly fails to support the verdict of $15,000.00 returned by the jury in this case, and on which the trial court entered judgment. Counsel cites many cases wherein very large verdicts are returned, and which are afterwards sustained by courts, and judgments entered thereon. However, each case must stand on its own merits, and verdicts in other cases furnish no reliable index as to the amount of damages which should be properly allowed. The verdict returned in this case, considering all the evidence and circumstances, must have been based upon something other than the evidence. Suffice to say that the evidence does not sustain it.

The judgment of the Circuit Court of Lincoln County, entered May 18, 1949, is reversed, the jury verdict set aside, and the case remanded to said court for a new trial.

*Reversed and remanded.*