122 S.E.2d 18 (1961)
Clara Marie CRUM
v.
George Clarence WARD and Steel City Transport, Inc.
No. 12057.
Supreme Court of Appeals of West Virginia.
Submitted April 19, 1961.
Decided June 20, 1961.
Dissenting Opinion September 7, 1961.
*20 Steptoe & Johnson, Stanley C. Morris, Charles W. Yeager, Charleston, for plaintiffs in error.
Lane & Preiser, John J. Lane, Stanley E. Preiser, Charleston, for defendants in error.
GIVEN, Judge.
This writ of error was granted to a judgment of the Circuit Court of Kanawha County, entered on the 31st day of March, 1960, which refused to grant petitioners a writ of error to a judgment of the Court of Common Pleas of Kanawha County. The action was instituted for recovery of damages alleged to have resulted from negligence of defendants, George Clarence Ward and Steel City Transport, Inc., in the operation of a tractor-trailer. The jury returned a verdict in favor of plaintiff, Clara Marie Crum, for eleven thousand dollars, and the Court of Common Pleas of Kanawha County entered judgment on the verdict.
The accident occurred near Smithers, West Virginia, on May 8, 1958, about 10:45 a.m., on a clear day, the road being dry. The plaintiff was operating an automobile owned by her husband, traveling east on United States Highway No. 60. Defendant Ward was operating the tractor-trailer, *21 owned by him, but at the time leased and being used in the business of the defendant, Steel City Transport, Inc., and then carrying a load of approximately nine thousand pounds. The tractor-trailer was also being driven east on United States Highway No. 60.
The evidence of the plaintiff tends to establish that after she had passed through Smithers, traveling at about thirty miles per hour, she was stopped, at the rear of several stopped automobiles, by a road repair crew flagman; that before stopping she gave a proper signal, indicating that she intended to stop, and that after she had stopped, set the emergency brake and turned off the ignition, the tractor-trailer was driven or jammed into the rear of the car being operated by her, resulting in the injuries complained of.
The evidence of defendants tends to establish that plaintiff passed the tractor-trailer, driving in the middle lane of the highway, as she had a right to do if using due care, then immediately pulled into the lane in which the tractor-trailer was being driven and, after driving some distance, came to a sudden stop, without giving proper signals, making it impossible for defendant Ward to have avoided the accident.
Plaintiff was taken to a hospital, where she remained for about a week, but for some time thereafter remained under the care and treatment of a physician. It was found that she suffered pain in her neck, in the lower back, and a contusion of the right knee. She later was returned to the hospital, at which time "traction" was applied, and "She had persistent symptoms of limitation of motion of the neck and apparently pain on moving it to any degree". Apparently this limitation of motion of the neck was due to pain, for the x-ray examinations were negative. Plaintiff had previously suffered injuries very similar to those mentioned above, and had previously been in the hospital for treatment of conditions peculiar to her sex. Other material facts will be stated in connection with the discussion of the particular proposition to which such other facts relate.
A qualified physician, Doctor Harold Kuhn, testifying on behalf of plaintiff, after having testified that he was familiar with various life expectancy tables and that, in his profession, it was necessary that he be familiar with the "life expectancy generally" of his patients, was asked to "Tell us from your experience and from any table which you regularly use, the life expectancy of this plaintiff, Mrs. Crum, who now gives her age at forty-one". Doctor Kuhn answered: "I am quoting from a publication of the United States Department of Health, Education and Welfare and the Vital Statistics Special Report which gives the life expectancy of a white female forty-one years of age as 34.73 years". Defendants objected to the testimony on the ground that the table or report had not been sufficiently identified, and moved that the plaintiff be required to introduce the same as part of the evidence, which objection and motion were overruled.
We think there was no prejudicial error in either action of the court. The question and answer reveal that the publication, sufficiently described, was used "regularly" by the witness, and, moreover, he was also testifying from "experience". The defendant had an opportunity to examine the publication, and to fully cross-examine the witness in relation thereto. Any lack of accuracy or question as to the correctness of the figures given, or in the authenticity of the publication, could have been made to appear by such cross-examination. See Lawrence v. Nelson, W.Va., 113 S.E.2d 241. In 25 C.J.S. Damages § 151, it is stated: "A person acquainted with the life insurance business, and the mortality tables on which such business is based, may testify as to the probable duration of lives."
Doctor Newell, called as a witness by defendants, testifying in chief, stated, in effect, that he had examined plaintiff and that her complaint was "soreness and stiffness, etc. of the knee", and *22 "extreme nervousness". Counsel for defendants then presented and offered in evidence a report of the doctor, which stated, in addition to the above mentioned findings, that there appeared "strain of muscles in cervical arch". Defendants then moved that they be permitted to cross-examine their own witness, for the reason that he was a hostile witness, and also moved that the witness be permitted to refer to his report for the purpose of refreshing his memory, which motions were denied.
We think there was no prejudicial error in the actions of the trial court. Though in certain circumstances a litigant may be permitted to cross-examine his own witness who is proved hostile, or where the litigant calling the witness has been surprised by adverse testimony, we think the facts here did not require the application of the rule. While there was some contrariety in the testimony of the witness, there was nothing which clearly established hostility or surprise. And the witness having later, after refreshing his memory from statements in the report, testified to the facts revealed by the report, there was no necessity for the introduction of the report as evidence. In such circumstances, the matter was within the discretion of the trial court. In Hartley v. Crede, 140 W.Va. 133, 82 S.E.2d 672, 683, we said: "* * * An exception to the general rule occurs and applies when, through entrapment, hostility or surprise, a party who offers a witness is misled and prejudiced by his testimony and, in such instances, such party may impeach his own witness to the extent permitted by the trial court in the proper exercise of its discretion. State v. Blankenship, 137 W.Va. 1, 69 S.E. 2d 398; 70 C.J., 793; 58 Am.Jur., Witnesses, Sections 798, 799. See also State v. Wolfe, 109 W.Va. 590, 156 S.E. 56, 74 A.L. R. 1039; State v. Justice, 107 W.Va. 490, 148 S.E. 843; State v. Swiger, 105 W.Va. 358, 143 S.E. 85."
During the closing argument counsel for plaintiff was permitted to write on a blackboard, and place before the jury the following figures relative to plaintiff's claim for damages for pain and suffering:

 "15 days at $100.00 $1,500.00
 5/8/58-3/4/59  301 days $25.00 7,525.00
 34.73 yrs. 12,676 days $3 38,028.00
 ___________
 $ 47,053.00"

In the course of the final argument counsel for plaintiff told the jury: "First of all, the testimony is that this woman was in the hospital from 5-8 to 5-15 of 1958. That is seven days, and again from 6-24 to 7-2 July 2nd. That is eight days, for a total of fifteen days. Then from the time she sustained her injury to today, from 5-8-58 to 3-4and I made this up yesterday and I thought we would be finished yesterdayis 301 days; and from today's date or yesterday's date to the end of her life's expectancy as testified to by Dr. Kuhn, that was 34.73 years or 12,676 days, and 12,676 days in the future when this woman will have pain, pain in her back and pain in the low back and pain in her knee and headaches, all or some of the pains and if she wouldn't have the pain she will have the worry when she gets up in the morning * * * and I will set my own evaluation and you take your own, but I will set my own and leave it with you as a guide; and she went through this discomfort in the hospital, and for discomfort and traction, I will average them out at $100.00 a day and that comes out to $1,500.00; and I don't think if any of us had to go to the hospital and could avoid it, I know we would be glad to pay $100.00 to stay away from it. I know I would. There are 301 days to now * * * and I will put a value of $25.00 a day, and that is the minimum figure for the anesthetic for an operation to do away with maybe one hour of pain, and this is for all day, and that figures $7,525.00; and now on these 12,676 days on which she will either have pain or the worry from pain during which she will be unable to perform these normal duties for her husband * * * I will place my value and you place your own, at $3.00 a day, and $3.00 a day is $90.00 a month, somewhere in the neighborhood of what *23 social security pays if something should happen to Mr. Crum, and that makes a total of $38,028.00, and a total of $47,053.00; and that, ladies and gentlemen, is my idea of what a fair compensation would be to this woman for the negligence of this man driving his truck without regard to who else was on the road * * *".
The contention is made that the above mentioned argument, sometimes referred to as the "per diem", "unit of time", "blackboard", or "mathematical formula" basis of argument or method for determining the value of pain and suffering, was not timely objected to by defendants. We think the objection was both timely and sufficient. Before the argument was commenced, counsel for defendants moved the court to prohibit or refuse to permit such an argument, which motion was denied, and the argument was permitted over objection. The court having clearly ruled such argument to be proper, counsel were not required to interrupt the trial by again imposing a further objection. To have done so, perhaps, would only have accentuated the suspected evil effects of such an argument.
The question of whether the permitting of the mathematical formula argument constitutes prejudicial error is answered differently by different courts and writers, some holding that it is clearly prejudicial, some that it is proper and helpful to the jury, and others that it may be permitted where certain cautionary safeguards are set up to prevent prejudice. The point has not been determined by this Court, though it was mentioned in Smith v. Penn Line Service, Inc., W.Va., 113 S.E.2d 505, where the objection to the argument was deemed insufficient to permit a decision of the point.
The question here involved does not relate to the practice of counsel in using a blackboard or other similar aids or methods for demonstration of, or bringing to the attention of the jury, facts or figures properly revealed by the evidence, such as figures relating to hospital and medical charges. As to such matters, it appears to be conceded, we think properly, that no error results from the use of a blackboard, or similar method, in an argument before the jury.
The authorities holding that it constitutes prejudicial error for counsel to suggest to the jury a mathematical formula for determining the amount of damages based on pain and suffering, whether the suggestion be by the blackboard method or in oral argument without the use of a blackboard or similar method, usually and generally follow the reasoning found in Botta v. Brunner, 26 N.J. 82, 138 A.2d 713, 60 A. L.R.2d 1331. There the Court held: "6. In an action for bodily injuries, it is an unwarranted intrusion into the jury's domain for plaintiff's counsel to suggest in his summation to the jury a monetary mathematical formula, based on a specified amount per hour for the admeasurement of damages for pain and suffering. 7. The measure of damages for pain and suffering following a personal injury is `fair and reasonable compensation,' since there can be no fixed basis, table, standard, or mathematical rule which will serve as an accurate index and guide to the establishment of awards of damages for personal injuries. 8. There is no measure by which the amount of pain and suffering endured by a particular human can be calculated, and no standard of value which can be applied; any effort to attach a price tag thereto must become lost in emotion, fancy and speculation." In the opinion in the Botta case the Court said: "For hundreds of years, the measure of damages for pain and suffering following in the wake of a personal injury has been `fair and reasonable compensation.' This general standard was adopted because of universal acknowledgment that a more specific or definitive one is impossible. There is and there can be no fixed basis, table, standard, or mathematical rule which will serve as an accurate index and guide to the establishment of damage awards for personal injuries. And it is equally plain that there is no measure *24 by which the amount of pain and suffering endured by a particular human can be calculated. No market place exists at which such malaise is bought and sold. A person can sell quantities of his blood, but there is no mart where the price of a voluntary subjection of oneself to pain and suffering is or can be fixed. It has never been suggested that a standard of value can be found and applied. The varieties and degrees of pain are almost infinite. Individuals differ greatly in susceptibility to pain and in capacity to withstand it. And the impossibility of recognizing or of isolating fixed levels or plateaus of suffering must be conceded.
"It is just as futile to undertake to attach a price tag to each level or plateau which could be said to have a reasonable basis in scientific or economic fact. Any effort to do so must become lost in emotion, fancy and speculation * * *.
"As a consequence, the law has declared the standard for measuring damages for personal injuries to be reasonable compensation and has entrusted the administration of this criterion to the impartial conscience and judgment of jurors who may be expected to act reasonably, intelligently and in harmony with the evidence * * *. This does not mean that jurors are free to fix what they would want as compensation if they had sustained the injuries or what the pain and suffering would be worth to them. The so-called `golden rule' may not be applied to such damages * * *" [26 N.J. 82, 138 A.2d 718.]
Numerous authorities are cited in the Botta case, supporting the holding therein, and we see no need to cite them here. A valuable annotation is found in 60 A.L.R.2d 1347. For later cases to the same effect, see King v. Railway Express Agency, Inc., N.D., 107 N.W.2d 509; Affett v. Milwaukee & Suburban Transport Corporation, 11 Wis.2d 604, 106 N.W.2d 274; Henne v. Balick, 1 Storey 369, 51 Del. 369, 146 A.2d 394; Faught v. Washam, Mo., 329 S.W.2d 588; Certified T.V. and Appliance Company v. Harrington, 201 Va. 109, 109 S.E.2d 126, 127. In the Virginia case the Court held: "6. In personal injury action, use by plaintiff's counsel of mathematical formula for measuring pain, suffering, mental anguish and percentage of disability on per diem basis involved speculation of counsel unsupported by evidence, and setting forth his calculations on blackboard amounted to giving of testimony in his summation argument, and was improper and constituted error." In the opinion the Court stated: "To permit plaintiff's counsel to suggest and argue to the jury an amount to be allowed for pain, suffering, mental anguish and disability calculated on a daily or other fixed basis, allows him to invade the province of the jury and to get before it what does not appear in the evidence. Since an expert witness would not be permitted to testify as to the market value of pain and suffering, which differs in individuals and the degree thereof may vary from day to day, certainly there is all the more reason for counsel not to do so. The estimates of counsel may tend to instill in the minds of the jurors impressions not founded on the evidence. Verdicts should be based on deductions drawn by the jury from the evidence presented and not the mere adoption of calculations submitted by counsel." See Personal Injury Damage Arguments University of Richmond Law Notes, Volume 1, Page 230.
The line of reasoning usually followed by the authorities which hold such an argument not prejudicial is indicated by the following quotation from the concurring opinion found in Olsen v. Preferred Risk Mutual Insurance Company, 11 Utah 2d 23, 354 P.2d 575, 578. "The jury is entitled to base its determination as to any amount awarded for pain and suffering upon the evidence with respect thereto, judged against the background of their experience and practical knowledge in the everyday affairs of life. If the argument has any valid purpose, and we recognize that it has, it is to discuss the issues in the case with them in that light. One of these is the *25 question of the amount of damages the plaintiff may be entitled to for pain and suffering. To say that he could not talk about nor suggest the amount would, for all practical purposes prevent him from talking about that issue. If he can talk about it at all and mention some gross figure, which it has always been assumed he could do, it would seem no more harmful to invite the jury's attention to a process of analysis and reasoning with respect thereto based upon the time involved and reasonable compensation therefor. This seems more realistic than expecting either counsel or the jury to reach into the air and grab some arbitrary figure without making such analysis." Other cases of the same view are cited in the annotation found in 60 A.L.R.2d 1347. Varied reasons are given as supporting the validity or justification of such arguments, but, summarily, they revolve around or relate to the right or privilege of counsel to fully and freely argue the facts indicated by the evidence before the jury, or reasonable inferences which may be reasonably drawn from such facts. See Ratner v. Arrington, Fla., 111 So.2d 82.
The Federal Courts appear to be as widely divided on the question as are the State Courts. See Vaughan v. Magee, 3 Cir., 218 F. 630; Wuth v. United States, D.C., 161 F.Supp. 661; Chicago & Northwestern Railway Co. v. Candler, 8 Cir., 283 F. 881, 28 A.L.R. 1174; Drlik v. Imperial Oil, Ltd., D.C., 141 F.Supp. 388; Bowers v. Pennsylvania Railroad Co., D.C., 182 F.Supp. 756.
Some of the authorities are to the effect that mathematical formula arguments are permissible where cautionary safeguards are applied. See Jones v. Hogan, 56 Wash. 2d 23, 351 P.2d 153; Missouri-Kansas-Texas Railroad Co. v. Jones, Okl., 354 P.2d 415; Flaherty v. Minneapolis & St. Louis Railway Co., 251 Minn. 345, 87 N.W.2d 633; Johnson v. Brown, 75 Nev. 437, 345 P.2d 754; 4-County Electric Power Association v. Clardy, 221 Miss. 403, 73 So.2d 144, 44 A.L.R.2d 1191.
Since this Court has not heretofore attempted to solve the problem, especially in view of the widely divergent views, we are in position to assess the problem anew and adopt that position we believe more likely to possess greater potential good, more just verdicts, and have reached the conclusion that in so far as the instant case is concerned, the argument complained of constituted prejudicial error for which the judgment complained of must be reversed.
In this jurisdiction it has been uniformly held, with unanimity in opinions, that pain and suffering may constitute an integral part of a plaintiff's case for damages resulting from personal injuries and, therefore, may be called to the attention of the jury. Notwithstanding the necessity in such cases of mentioning pain and suffering of a plaintiff, the Court has just as uniformly held that counsel may not injudiciously excite a jury to sympathy or prejudice so as to influence the verdict, and to attempt to do so would, usually at least, constitute prejudice. Also, with the same uniformity in our decisions, it has been held that the amount of damages allowable for pain and suffering is peculiarly a jury question, and that no known method of arriving at any money value thereof exists, or could exist. No testimony as to any money value of pain and suffering is admissible in evidence, no matter how experienced or learned the witness. See French v. Sinkford, 132 W.Va. 66, 54 S.E.2d 38; Raines v. Faulkner, 131 W.Va. 10, 48 S.E.2d 393; Yuncke v. Welker, 128 W.Va. 299, 36 S.E.2d 410; Collins v. Skaggs, 110 W.Va. 518, 159 S.E. 515; Morris v. Baltimore & Ohio Railroad Co., 107 W.Va. 181, 147 S.E. 759; Landau v. Farr, 104 W.Va. 445, 140 S.E. 141; Thomas v. Lupis, 87 W.Va. 772, 106 S.E. 78; Trice v. Chesapeake & Ohio Railway Co., 40 W.Va. 271, 21 S.E. 1022. In Collins v. Skaggs, supra, it was held: 2. The law furnishes no measure of damages for pain and suffering. In such case, the decision of the jury upon the amount is generally conclusive, unless it is so large or small as to *26 induce the belief that the jury was influenced by passion, partiality, corruption, or prejudice, or misled by some mistaken view of the case."
In Yuncke v. Welker, supra [128 W.Va. 299, 36 S.E.2d 411], it was held: 3. In an action for personal injuries, the damages are unliquidated and indeterminate in character, and the assessment of such damages is the peculiar and exclusive province of the jury."
In our view, the mathematical formula argument is based wholly on speculation, or imaginary inferences, not supported by facts, in reality by supposed facts which could not be received in evidence if offered. No effort, perhaps, would succeed in pointing out the almost innumerable variables necessarily existing or involved in such speculation. For illustration, however, it may be suggested that any attempt to place a money value on pain for any definite unit of time is impossible of any sound basis, for no two persons, it is believed, bear the same sensitivity to pain. The severity or duration of pain, though resulting from the same cause, varies as to different individuals so greatly that the most experienced and learned physician finds no method of measuring it, but, to a very large extent, must rely on representations of the patient. It is sometimes contended that though such uncertainties exist, necessitating speculation, it is more reasonable to permit counsel to suggest or speculate than to permit the jury to do so. But the time-tried and time-honored method of preventing such speculation, and preventing the inflaming of the jury, has afforded the courts a way to deny unjust verdicts, by setting them aside. We would assume that if the tried and proved method is to be discarded, and counsel permitted to suggest as proper a mathematical formula, that courts would be bound by a finding based on that formula, and would be powerless, in most cases, at least, to control such verdicts, though there existed little doubt that they were unduly influenced.
Though wide latitude and freedom of counsel in arguments to a jury are and ought to be allowed, we have never held that such arguments may be based on facts not in the record, or on inferences based on, or drawn from, facts which are not even admissible. To permit such arguments would not only disturb, to say the least, well known rules of such procedure, and mock or insult the legitimate purposes of such arguments, but would throw wide all efforts to confine such arguments in such a manner as to defeat the useful need of aid to the jury through arguments. In 2 M.J., Argument and Conduct of Counsel, Section 17, it is stated: "While great latitude is allowed argument of counsel, they should not be permitted to excite and inflame the minds of the jury against one of the litigants, nor appeal to their passions and prejudices, and if, when such an argument is made and the trial court is appealed to, it fails to take proper steps to correct its ill tendencies, and an exception is taken at the proper time, it is good ground for reversing the judgment and setting aside the verdict * * * Appeal to the sympathy of the jury in argument, in the teeth of an instruction that they should not let sympathy sway them in finding their verdict, is to be deprecated and condemned, and although the court has told the jury to disregard the appeal, it may, in some cases, be prejudicial and constitute reversible error." See 53 Am.Jur., Trial, Section 482; 88 C.J.S. Trial § 191.
Practical, psychological and philosophical factors do enter the picture. The power of suggestion, and its immeasurable effects, are well known. To merely suggest the existence of pain and suffering, especially pain and suffering of a fellow human being, engenders or activates such complex emotions as sympathy, prejudice, compassion and caprice that exist in every normal person, including each of the twelve jurors, and creates a fervent, resolute desire to relieve or aid the sufferer. The effects of such a suggestion are greatly enhanced or multiplied when made by experienced, *27 learned and eloquent counsel, and even more greatly enhanced by the action of the trial judge in telling the jury, which he effectively does by approving or permitting the argument, that the suggestion of money value of pain and suffering is a reasonable argument and is justifiable, notwithstanding the complete absence of facts related to money value thereof. In such circumstances, could a fair and just verdict, free from sympathy, ordinarily be expected?
In Hendricks v. Monongahela West Penn Public Service Company, 111 W.Va. 576, 163 S.E. 411, 416, counsel in argument to the jury made certain remarks which possibly appealed to the sympathy of the jury. The trial court instructed the jury to disregard such remarks, yet this Court, in reversing the judgment for plaintiff, stated: "* * * This argument was an appeal to the sympathy of the jury, and, although the court told the jury to disregard the statement, the persistence in the appeal could not fail in making its impression on the minds of the jurors. Justice is not measured by sympathy. Justice keeps the scales balanced evenly with bandaged eyes, and is not moved by passion, prejudice or sympathy * * *".
An examination of some of the many cases wherein this Court has been forced to set aside verdicts because excessive, will reveal the great difficulty in obtaining a fair and just verdict where pain and suffering of a plaintiff are involved. In such cases it is the plaintiff who suffers from the error, by being required to further litigate. See Brewer v. Appalachian Constructors, Inc., 138 W.Va. 437, 76 S.E.2d 916; Drummond v. Cook Motor Lines, 136 W.Va. 293, 67 S.E.2d 337; Frampton v. Consolidated Bus Lines, 134 W.Va. 815, 62 S.E.2d 126; Watson v. Woodall, 134 W.Va. 787, 61 S. E.2d 747; French v. Sinkford, 132 W.Va. 66, 54 S.E.2d 38; Vance v. Logan-Williamson Bus Co., 131 W.Va. 296, 46 S.E.2d 783; Snodgrass v. Charleston NuGrape Co., 113 W.Va. 748, 169 S.E. 406; Thomas v. Lupis, 87 W.Va. 772, 106 S.E. 78; Chafin v. Norfolk & Western Railway Co., 80 W.Va. 703, 93 S.E. 822; Stevens v. Friedman, 58 W. Va. 78, 51 S.E. 132.
This Court's holdings of such prejudicial effects of such an argument are well illustrated by its long line of decisions which hold that the mere mentioning of insurance in the presence of the jury usually, at least, constitutes reversible error, whether the mentioning of insurance occurs in argument, colloquy, or in the examination of a witness, notwithstanding the trial judge may have strongly and vigorously instructed the jury not to consider the question of the existence or nonexistence of insurance See Leftwich v. Wesco Corporation, W.Va., 119 S.E.2d 401.
It is, of course, the prerogative of counsel for plaintiff to use every fair, reasonable and legitimate method to obtain a large verdict. The interest of counsel for defendants is to keep the amount of any verdict as low as possible. The function of the court, however, is not to induce a large verdict or a small verdict, but a fair, impartial and just verdict, a verdict based only on evidence, not on sympathy or like emotions. There can be no doubt that if the mathematical formula arguments were permitted, verdicts would be increased materially because of the emotions of sympathy, prejudice or compassion. Realistically, can we hope or expect a fair and just verdict where the thinking of the jury is permeated with sympathy?
It is contended that the verdict in the instant case should not be disturbed, the amount thereof not indicating prejudice. The fact remains, however, that the amount of recovery depended very largely on alleged pain and suffering, and the Court can not say or assume that the erroneous argument did not materially influence the amount of the finding. The facts do not bring the instant case within the rule sometimes applied, that Courts will not disturb verdicts where no prejudice exists. Whether that rule may be applied, where the mathematical formula argument is erroneously permitted, must await a proper case.
*28 In the petition filed in this Court praying for a writ of error and supersedeas, an assignment of error was made relating to the action of counsel for plaintiff in bringing before the jury the possible existence of insurance. The point, however, apparently is not relied on for reversal and is not developed by defendants in their brief, and we deem it abandoned. Moreover, since the judgments of the lower courts must be reversed on other grounds, and the question may not arise in the event of a new trial, a discussion thereof is not now required.
Plaintiff's Instruction No. 3A, as amended, read to the jury over objections of defendants, told the jury "that in order for the plaintiff to be barred by contributory negligence, the defendants must prove by a preponderance of the evidence that the plaintiff's negligence, if any, was a proximate cause of the injury, if any". Defendants contend that to bar recovery by the plaintiff, contributory negligence need not be a proximate cause of the injury, but that plaintiff will be barred from recovery if his contributory negligence "proximately contributes in the slightest degree to the accident".
The rule is correctly stated in Morton v. Baber, 118 W.Va. 457, 190 S.E. 767, 768, where it was held: "3. * * * there is no error in instructing the jury that there can be no recovery if negligence of the decedent, however slight, contributed proximately to his own injury. Such negligence contributes proximately to the injury, if, without it, the injury would not have resulted."
A plaintiff, of course, is barred from recovery where his own negligence is the proximate cause of the injury or, stated in another way, he can not recover where the accident was the result of his own negligence. McLeod v. Charleston Laundry, 106 W.Va. 361, 145 S.E. 756. A plaintiff, however, is not barred where his own negligence was in no sense a link in the chain of causation, that is, where his negligence was distinctly separated from, did not contribute to, the proximate cause of the injury. Graham v. Wriston, W.Va., 120 S.E.2d 713; Otte v. Miller, 125 W.Va. 317, 24 S.E.2d 90; State ex rel. Myles v. American Surety Company of New York, 99 W.Va. 123, 127 S.E. 919; Willhide v. Biggs, 118 W.Va. 160, 188 S.E. 876.
Thus it clearly appears, we think, that it was prejudicial error for the trial court to instruct the jury that, to bar plaintiff's recovery defendants must prove, by a preponderance of the evidence, that contributory negligence "was a proximate cause of the injury". Contributory negligence, to bar recovery, need not be a proximate cause, or the proximate cause, but precludes recovery "however slight", if it actually "contributes proximately to the injury".
Plaintiff's Instruction No. 3A, as amended, also told the jury that plaintiff "is presumed to have exercised due and proper care at the time she received her injuries, if any, and the burden of proof is upon the defendants to overcome this presumption by a preponderance of the evidence". Defendants, on the theory that they were entitled to a like instruction relating to such a presumption as to primary negligence, then offered their Instruction B, which was refused, and which would have told the jury that "the presumption is that the defendants were free from negligence. The burden is on the plaintiff to prove, by a preponderance of the evidence, that the defendants were guilty of negligence that proximately caused the accident". The instruction states a sound proposition of law, applicable to facts in the instant case. Was the proposition of law sufficiently covered by any other instruction?
Defendants' Instruction No. 7 told the jury that an accident "does not even raise a presumption of negligence", and that the evidence must establish "that the defendants were guilty of negligence at the time and place of the accident and *29 that their negligence proximately caused plaintiff's injuries". In these circumstances, we think the refusal of the trial court to read to the jury defendants' Instruction B did not constitute reversible error, though to have given it would not have been prejudicial error. Where by an instruction a jury has been sufficiently informed as to a material point of law, it is not reversible error for a trial court to refuse to further instruct on that point. State v. Cirullo, 142 W.Va. 56, 93 S.E.2d 526, 535.
Defendants' Instruction No. 4, refused by the court, would have required the jury, in considering their verdict, to first determine the question of liability of defendants, and then, if liability existed, the amount of damages. We think the refusal was not prejudicial error. Though the suggested procedure may not be illogical, and has been, by some courts or by certain rules, adopted or followed, under our procedure the practice has been, usually at least, left to the jury, and we can see no prejudice to any litigant in permitting an intelligent jury to determine such procedure for itself. For illustration, see Robertson v. Hobson, 114 W.Va. 236, 171 S.E. 745.
Defendants' Instruction No. 8, which was refused, advised the jury of the duties of a person acting in circumstances of a sudden emergency. The evidence does not indicate any sudden emergency necessitating the giving of such an instruction. It appears that after plaintiff's automobile passed the tractor-trailer, and had moved into the lane in which the tractor-trailer was traveling, the defendant Ward "continued on down the road", following plaintiff's car at the "same speed", after which the accident occurred. It is not disputed that plaintiff was forced to stop by a state road repair crew flagman, or by automobiles so stopped on the highway as to make it impossible for plaintiff to proceed, facts which without doubt were as much in the observation of defendant Ward, or should have been, as they were within the observation of plaintiff, making it certain that, if there existed any sudden emergency, the action of defendant Ward contributed thereto. To rely on the sudden emergency doctrine, a defendant must not be in the position of having wholly or partly created it. See Reilley v. Byard, W.Va., 119 S.E.2d 650; Tochek v. Monongahela Transport Co., 109 W.Va. 20, 152 S.E. 776. "One whose negligence brought about or contributed to bringing about an emergency cannot escape liability for acts or omissions which would have been negligent under ordinary circumstances on the ground that they were done in stress of an emergency * * *". 65 C.J.S. Negligence § 17e.
Defendants' Instructions Nos. 9A and 9B, substantially to the same effect, both refused, would have told the jury that if plaintiff failed to give the examining physicians a true history of her injuries, and such failure prevented the physicians from reaching valid conclusions, the jury could disregard the opinions of the physicians or give them such weight as they believed them entitled. We think the refusal of such instructions did not constitute reversible error. Though there was slight testimony to the effect that plaintiff had failed to reveal certain facts relating to her prior injuries and treatment, there was no evidence that such failure in any way affected the diagnosis of her disabilities or a true understanding by the physicians of her complaints. Moreover, the jury were told by defendants' Instruction No. 12 that they were "not bound to accept as conclusive the opinion" of any physician, and that whether any such conclusion was sound "is for you alone to determine taking into consideration * * * their relative opportunities for study or observation of the matters about which they testified and any other matters which serve to illuminate their statements". As above pointed out, no necessity exists for duplication of instructions. State v. Cirullo, 142 W.Va. 56, 93 S.E.2d 526, 535.
*30 Defendants' Instructions Nos. 10 and 11, refused by the court, were similar and to the general effect that plaintiff was entitled to recover only for injuries, suffering or disabilities resulting from the accident on which the action was founded. Since the evidence discloses that plaintiff had previously suffered an accident which resulted in practically, if not exactly, the same type of disabilities, affecting the same parts of her body, and also that she had previously suffered, and had been treated for, conditions peculiar to her sex, which could have caused "extreme nervousness" and "anxiety and tension", from which she claims to have been suffering at the time of trial, we think, therefore, that in so far as the question here discussed is involved, it was prejudicial error not to give to the jury either defendant's Instruction No. 10 or No. 11. Undoubtedly the plaintiff was entitled to recover only damages growing out of or resulting from injuries occasioned by the accident on which the action was founded, and the jury should have been informed of that fact. "2. In order to warrant a substantial recovery in a tort action, the plaintiff must show a legal injury and a perceptible resultant damage. `The wrong done and the injury sustained must bear to each other the relation of cause and effect.'" Chafin v. Gay Coal & Coke Company, 113 W.Va. 823, 169 S.E. 485. See Peters v. Johnson, Jackson and Co., 50 W.Va. 644, 41 S.E. 190, 57 L.R.A. 428.
Defendants' Instruction No. 13, refused by the court, would have directed the jury that, in the event of a finding in favor of plaintiff, not to "add any sum to what you would otherwise find on account of Federal income taxes"; and that as a "matter of law any amount you award the plaintiff by your verdict is not income to the plaintiff within the meaning of Federal tax law". The decided cases are in sharp conflict as to whether such an instruction should be given the jury, or whether the refusal thereof, as in the instant case, constitutes prejudicial error. This Court has heretofore considered neither question.
In considering such a question, in Hall v. Chicago & North Western Railway Co., 5 Ill.2d 135, 125 N.E.2d 77, 78, 50 A.L.R. 2d 661, the Court held: "10. In personal injury suit, incident of taxation is not proper factor for jury's consideration in awarding damages, whether imparted by oral argument or written instruction." In the opinion the Court stated: "It is a general principle of law that in the trial of a lawsuit the status of the parties is immaterial. Thus, what the plaintiff does with an award, or how the defendant acquires the money with which to pay the award, is of no concern to the court or jury. Similarly, whether the plaintiff has to pay a tax on the award is a matter that concerns only the plaintiff and the government. The tort-feasor has no interest in such question. And if the jury were to mitigate the damages of the plaintiff by reason of the income tax exemption accorded him, then the very Congressional intent of the income tax law to give an injured party a tax benefit would be nullified.
"The defendant has cited Dempsey v. Thompson, 363 Mo. 339, 251 S.W.2d 42, wherein the Missouri Supreme Court held that it was proper to instruct the jury that an award was not subject to Federal income tax. For the reasons stated herein, we disagree with the conclusion reached by that court. The decision of the same court two years previously, in Hilton v. Thompson, 360 Mo. 177, 227 S.W.2d 675, seems to be more in accord with what the law should be. There that court said, 360 Mo. at page 191, 227 S.W.2d at page 681, as follows: `Appellant complains of error in the refusal of an instruction directing the jury to include nothing in the verdict for Federal, State, or City taxes since such taxes could not be assessed upon the amount of any verdict awarded respondent. Appellant cites no authority to support the giving of such instruction. The instruction was properly refused. The jury was properly *31 instructed on the factors to be considered in fixing the amount of respondent's damages and it would not have been proper to inject into the case an extraneous issue regarding the tax exempt status of the damages which might be awarded.'
"We are of the opinion that the incident of taxation is not a proper factor for a jury's consideration, imparted either by oral argument or written instruction. It introduces an extraneous subject, giving rise to conjecture and speculation."
The authorities pro and con are cited in an annotation found in 63 A.L.R.2d 1393. There it is stated: "There are several schools of judicial thought on the matter but the more general view is that in fixing damages for accrued loss of earnings or for impairment of future earning capacity because of personal injuries, the income tax consequences of the injury and the award should not be taken into consideration; on the contrary, the award of damages should be based upon the plaintiff's gross earnings or earning capacity and should not be reduced because of any income tax saving which may result to the plaintiff from the fact that the damages will be exempt from income tax * * * Courts so ruling have rather generally considered that income tax liability or saving is a matter not pertinent to the damages issue, being a matter between the plaintiff and the taxing authority, of no legal concern to the defendant; that the amount of income tax which might become due on one's prospective earnings in future years is too conjectural to be considered in fixing damages; or that to introduce the income tax matter into a lawsuit for damages would be unduly complicating and confusing * * *".
Our view is in accord with the indicated general view, that the refusal of such an instruction does not constitute prejudicial error. There seems little doubt that the injection of such an issue into a jury trial would ordinarily result only in speculation as to so many variables, changing or unsettled circumstances or facts as to confuse the jury and create useless problems, to the injury of either the defendant or the plaintiff.
For the reasons indicated, the judgments of the Circuit Court and the Court of Common Pleas of Kanawha County must be reversed, the verdict of the jury set aside, and the case remanded for a new trial.
Judgments reversed; verdict set aside; case remanded.
HAYMOND, President (dissenting).
As I feel that the judgment of the Court of Common Pleas of Kanawha County which confirmed the verdict of the jury for $11,000.00 was free from prejudicial error, I dissent from the decision of the majority of this Court to reverse that judgment, set aside the verdict and award the defendants a new trial in this action of trespass on the case.
The action of the trial court which the majority, as I think incorrectly, regarded as prejudicially erroneous, consisted of its rulings in permitting the attorney for the plaintiff in his closing argument to the jury to use a mathematical or per diem formula in connection with the element of damages concerning the pain and suffering sustained by the plaintiff and resulting from the negligence of the defendants and to illustrate his argument by numerous figures written upon a blackboard or chart in view of the jury which aggregated an amount for that item of $47,053.00, and in refusing to give either one or the other of two instructions offered by the defendants designated No. 10 and No. 11. In my judgment neither ruling constituted prejudicial error which justified reversal of the judgment of the court of common pleas.
It is true, as indicated by the majority opinion, that this particular type of argument of counsel has not been specifically considered and passed upon by this Court in any of its prior decisions. The identical question concerning such argument of *32 counsel, however, has been considered and determined in numerous decisions of appellate courts in other jurisdictions and, though those decisions are conflicting, it is my belief that the better considered cases involving the use in the argument of counsel of a mathematical or per diem formula, or other fixed method, to assist the jury in determining fair and reasonable compensation for pain and suffering, negligently inflicted, as an element of damages, sanction the use of such formula or method, and that its use is sustained and regarded as proper by the decided weight of judicial authority. Ratner v. Arrington, District Court of Appeals of Florida, Third District, 111 So.2d 82; Clark v. Hudson, 265 Ala. 630, 93 So.2d 133; McLaney v. Turner, 267 Ala. 588, 104 So.2d 315; Louisville and Nashville Railroad Company v. Mattingly, Ky., 339 S.W.2d 155; Four-County Electric Power Association v. Clardy, 221 Miss. 403, 73 So.2d 144, 44 A.L.R.2d 1191; Arnold v. Ellis, 231 Miss. 757, 97 So.2d 744; Boutang v. Twin City Motor Bus Company, 248 Minn. 240, 80 N.W.2d 30; Flaherty v. Minneapolis & St. Louis Railway Company, 251 Minn. 345, 87 N.W.2d 633; Johnson v. Brown, 75 Nev. 437, 345 P.2d 754; Missouri-Kansas-Texas Railroad Company v. Jones, Okl., 354 P.2d 415; A. B. C. Storage and Moving Company, Inc. v. Herron, Tex.Civ.App., 138 S.W.2d 211; J. D. Wright and Son Truck Line v. Chandler, Tex.Civ.App., 231 S.W.2d 786; Continental Bus System, Inc. v. Toombs, Tex.Civ.App., 325 S.W.2d 153; Olsen v. Preferred Risk Mutual Insurance Company, 11 Utah 2d 23, 354 P.2d 575; Jones v. Hogan, 56 Wash.2d 23, 351 P.2d 153; Imperial Oil, Limited, v. Drlik, 234 F.2d 4, 6th Circuit, certiorari denied, 352 U.S. 941, 77 S.Ct. 261, 1 L.Ed.2d 236. The practice is also approved by the authors of numerous articles in law reviews of recognized standing in legal circles. 43 Minn.Law Rev. 832; 38 N.C.L.Rev. 289; 33 S.C.L.Q. 24.
The leading case in support of the minority view is Botta v. Brunner, 26 N.J. 82, 138 A.2d 713, 60 A.L.R.2d 1331. Some of the other cases in accord with the Botta case are King v. Railway Express Agency, Inc., N.D., 107 N.W.2d 509; Affett v. Milwaukee and Suburban Transport Corporation, 11 Wis.2d 604, 106 N.W.2d 274; Schulz v. General Casualty Company, 233 Wis. 118, 288 N.W. 803; Henne v. Balick, 1 Storey 369, 51 Del. 369, 146 A.2d 394; Faught v. Washam, Mo., 329 S.W.2d 588; Certified T. V. and Appliance Company v. Harrington, 201 Va. 109, 109 S.E.2d 126; and Wuth v. United States, D.C., 161 F.Supp. 661.
The reasons in support of and in opposition to the use of a mathematical or per diem formula or other fixed method in the argument of counsel in enabling the jury to ascertain fair and reasonable compensation for pain and suffering negligently inflicted are mentioned and discussed in many of the above cited cases.
In Ratner v. Arrington, District Court of Appeals of Florida, Third District, 111 So. 2d 82, the court detailed the main reasons in opposition to and in favor of the use of the foregoing formula or method in the argument of counsel with respect to damages for pain and suffering.
The reasons stated in the opinion in the Ratner case in opposition to such argument are in substance: (1) That there is no evidentiary basis for converting pain and suffering into monetary terms; (2) that it is improper for counsel to suggest a total amount for pain and suffering, and therefore wrong to suggest per diem amounts; (3) that to do so amounts to the attorney giving testimony and expressing opinions and conclusions on matters not disclosed by the evidence; (4) that juries frequently are misled by such argument to make excessive awards and that admonitions of the court that the jury should not consider such argument as evidence do not erase all their prejudicial effect; and (5) that after such argument a defendant is prejudiced by being placed in the position of attempting to rebut an argument which is not based on the evidence, that if he does not answer in kind the argument of counsel for the plaintiff *33 he suffers from its effect on the jury, and that if he does so answer he impliedly approves that type of argument in evaluating a monetary recovery for pain and suffering as an element of damages.
The reasons stated in the same opinion in favor of such argument are in substance: (1) That it is necessary that the jury be guided by some reasonable and practical considerations; (2) that a trier of facts should not be required to determine the matter in the abstract or to do so by a blind guess; (3) that the absence of a yardstick at least makes questionable the contention that the suggestion of a monetary amount misleads the jury; (4) that the argument that the evidence fails to provide a foundation for per diem suggestion is unconvincing because the jury must, by that or some other process of reasoning, estimate and allow a proper amount for pain and suffering or other like element of damages; (5) that the suggestion by counsel that the evidence as to pain and suffering justifies allowance of a certain amount, in total or per diem figures, does no more than present one method of reasoning which the trier of facts may employ to aid him in making a reasonable and sane estimate; (6) that such per diem argument is not evidence and is used only as an illustration and suggestion; (7) that the asserted danger of such suggestion being mistaken for evidence is an exaggeration, and that such danger, if present, can be dispelled by an instruction by the court; and (8) that when counsel for one side has made such argument opposing counsel is equally free to suggest his own amounts as inferred by him from the evidence relating to the condition for which damages are sought.
In considering the above enumerated reasons in the Ratner case, the court used this pertinent and convincing language:
"The items or elements of damages listed on the chart in this case, and which thus were argued to the jury, all were supported by some evidence of established or calculable monetary value, except the elements of `pain and suffering' and `physical disability and inability to lead a normal life'. As to those two elements, we are not prepared to hold that it was prejudicial error for the trial court to allow counsel for appellee, in argument to the jury, to suggest an amount which he felt would be proper and reasonable to be awarded as damages therefor. Nor do we hold it was error to include a suggested per diem amount approach to such an award.
"True, the latter point is one which presently is giving courts much concern. Recent holdings, for and against the allowance of such arguments, are not grounded on reasons of sufficient force to compel the decision either way. The ultimate course of judicial opinion on the point is not yet discernible. Therefore, in approving the practice now we do not purport to foreclose the question. We do, however, now hold that the trial judge did not abuse his discretion in overruling appellants' objections to the use of the chart and the argument of appellee's counsel based on the chart.
"In so holding we give due regard to the proposition that `pain and suffering have no market price.' But the very absence of a fixed rule or standard for any monetary admeasurement of pain and suffering as an element of damages supplies a reason why counsel for the parties should be allotted, on this item of damages, their entitled latitude in argumentto comment on the evidence, its nature and effect, and to note all proper inferences which reasonably may spring from the evidence adduced. * * *."
The reasons which justify the use of a mathematical or per diem formula in the argument of counsel with respect to monetary recovery for pain and suffering are variously stated in the cases which permit and approve that type of argument and the use of a chart or blackboard and which, as above indicated, constitute the decided weight of judicial authority.
In McLaney v. Turner, 267 Ala. 588, 104 So.2d 315, in approving an argument of *34 counsel in which a mathematical or per diem formula was used in the trial of a case in which a jury returned a verdict for $50,000.00, the opinion contains this language:
"* * * counsel may, in his argument, state or comment on all proper inferences from the evidence and may draw conclusions from the evidence based on his own reasoning. Louisville & Nashville R. Co. v. Tucker, 262 Ala. 570, 80 So.2d 288; Cahaba Southern Mining Co. v. Pratt, 146 Ala. 245, 40 So. 943. We have frequently said that in the matter of argument much `must be left * * * to the enlightened judgment of the trial court, with presumptions in favor of the ruling.' Smith v. Reed, 252 Ala. 107, 39 So.2d 653, 657; Hardy v. Randall, 173 Ala. 516, 55 So. 997; Crocker v. Lee, 261 Ala. 439, 74 So.2d 429.
"The use of blackboards and charts has been sanctioned in this jurisdiction and in almost all other jurisdictions in this country for use in clarification, explanation and for use by counsel in drawing inferences or making calculations based upon matters in evidence. Clark v. Hudson, 265 Ala. 630, 93 So.2d 138; Crocker v. Lee, supra; Lauderdale County Co-op. v. Lansdell, 263 Ala. 557, 83 So.2d 201; 4 County Electric Power Ass'n v. Clardy, 221 Miss. 403, 73 So.2d 144, 44 A.L.R.2d 1191.
"We are of the opinion that the matters on the chart of which appellant complains could have been orally stated to the jury in argument of counsel in that the amounts of damages set out on the chart could have been stated as inferences of counsel drawn from the evidence and his own resources. See 88 C.J.S. Trial § 181c, p. 356. We feel that the correct rule is set out in a recent Mississippi case in which a very similar problem arose in 4 County Electric Power Ass'n v. Clardy, 221 Miss. 403, 73 So.2d 144, 151, 44 A.L.R.2d 1191."
In the recent case of Louisville and Nashville Railroad Company v. Mattingly, Ky., 339 S.W.2d 155, in which the amount of the verdict was $62,331, the court held that in the trial of a personal injury action it was proper for counsel for the plaintiff to suggest a mathematical per diem value for pain and suffering to be multiplied by the life expectancy of the plaintiff. In the opinion the Court said: "Appellant contends that the `recent trend of enlightened judicial opinion in the United States has prohibited such an argument,' citing Botta v. Brunner, 1958, 26 N.J. 82, 138 A.2d 713, 60 A.L.R.2d 1331, and cases from various other jurisdictions, including Pennsylvania and Virginia. The argument is that figures plucked out of thin air by counsel tend to instill in the minds of the jurors impressions not founded on evidence. This viewpoint is severely criticized in 12 Rutgers Law Review 522 and 28 Cincinnati Law Review 142. See also, for a particularly careful analysis of the question, Ratner v. Arrington, Fla.1959, 111 So.2d 82, and Jones v. Hogan, 1960, [56 Wash.2d 23] 351 P.2d 153. Since the jury itself must arrive at a specific figure we see no logical reason why counsel should not be permitted to speak in terms of specific figures. It was held in Aetna Oil Co. v. Metcalf, 1944, 298 Ky. 706, 183 S.W.2d 637, that counsel are entitled to argue the amount of damages. It is no more speculative to suggest a per diem figure than it is to suggest the total amount. If the argument results in an excessive verdict the control lies in the court under CR 59.01(4). We adhere to the viewpoint that counsel may properly argue the amount of damages. The argument in this case was not improper."
In the case of Four-County Electric Power Association v. Clardy, 221 Miss. 403, 73 So.2d 144, 44 A.L.R.2d 1191, cited and referred to in the opinion in the McLaney case, in which the jury returned a verdict for $75,000.00 and in which in the argument of counsel a mathematical or per diem formula accompanied by a large paper chart was used to suggest a monetary value for pain, suffering and mental anguish on the basis of the number of days to the time of the trial and for the rest of the plaintiff's *35 life based on her life expectancy, the opinion contains these statements:
"Appellant contends that it was reversible error to permit appellee's counsel to refer to this chart in the opening statement to the jury and in the arguments. However, we do not think that was error. All of the figures stated in the chart, except those with reference to pain, suffering and mental anguish, were supported by some evidence in the record. The declaration itself contained the total amount of the demand, and enumerated the various items of damages claimed by plaintiff. Miss.Code 1942, Section 1526, provides: `Before the introduction of the evidence the plaintiff may briefly state his case orally to the jury, and the evidence by which he expects to sustain it; and then the defendant his case, and the evidence by which he expects to support it.' Plaintiff's counsel has a right to state his case orally and to outline the evidence by which he expects to sustain it. He would have a right to state orally and in detail what damages he expected to prove, and he would have the right to take a pencil, list those items of damages, and show that sheet of paper to the jury in the opening statement and arguments. So we cannot see any reason why counsel should be denied the equivalent right to prepare in advance a chart outlining what he expects to prove, and to use it in the opening statement and in the arguments. With reference to the figures claimed by appellee for pain, suffering and mental anguish, there was no evidence on any monetary amount, but the undisputed record showed that appellee suffered and will continue to suffer excruciating and long-continued pain. Counsel had the right to state to the jury what he thought would be proper damages for the jury to award for this item, in his opening statement and arguments."
In Arnold v. Ellis, 231 Miss. 757, 97 So. 2d 744, in which the jury returned a verdict for $15,000.00, the court said:
"Defense counsel made a motion for a mistrial because, it was said, plaintiff's counsel, in the statement of his case to the jury, used a blackboard to show that Mrs. Ellis, of the age of thirty-five years and with a life expectancy of thirty-three years, at 20 cents an hour for the pain which she had endured and would endure, would be damaged to the amount of $57,816. The motion was overruled and appellants contend that this was error.
"It is practically impossible to prove the exact dollar and cent value of pain in varying degrees. Such determination must be left to the jury, who, in the exercise of common sense and judgment, are vested with the right and duty to make a fair appraisal of the amount which should be awarded as compensation for that element of damage. Counsel, in his chart, was merely stating what he thought would be the damage for his client's pain and suffering. He had a perfect right to do this, as was held in Four-County Electric Power Association v. Clardy, 221 Miss. 403, 73 So. 2d 144, 151, 44 A.L.R.2d 1191, where under similar circumstances, this Court said. `Counsel had the right to state to the jury what he thought would be proper damages for the jury to award for this item, (pain) in his opening statement and arguments.' See also Nehi Bottling Company v. Jefferson, [226 Miss. 586] 84 So.2d 684, and cases there cited. The motion was properly overruled."
In Johnson v. Brown, 75 Nev. 437, 345 P.2d 754, in which the same type of argument was used, the opinion contains these paragraphs:
"The recent and leading case on this subject, Botta v. Brunner, 26 N.J. 82, 138 A.2d 713, 60 A.L.R.2d 1331, is very persuasive that such suggestion to the jury constitutes an unwarranted intrusion into the domain of the jury. The cases in favor and against the rule announced in the Botta case are discussed therein as well as in the annotation thereto (60 A.L.R.2d 1347). In New Jersey, however, the rule is that neither court nor counsel are permitted to refer to the ad damnum clause of the complaint.
*36 "The rule is to the contrary by statute in Nevada. NRS § 16.090 provides for the reading of the pleadings to the jury, and it is the practice in this state for the entire complaint including the prayer thereof, together with the other pleadings to be read as the first order of proceedings after the jury has been sworn. Furthermore, it is common practice in this state for the trial court to instruct the jury that if its verdict is for the plaintiff, it should not be in excess of the particular amount specified in the prayer of the complaint.
"We feel therefore that the preferable rule in this state in view of our statute and the custom and practice prevalent thereunder is that whether, under the circumstances of the particular case, the arguments of counsel suggesting a mathematical basis for fixing damages for pain and suffering is an improper invasion of the rights of the jury is to be determined by the trial judge in the exercise of judicial discretion."
In Continental Bus System, Inc. v. Toombs, Tex.Civ.App., 325 S.W.2d 153, in approving an argument of counsel in which a mathematical or per diem formula was used in connection with the amount of damages to be awarded for pain and suffering, the court said:
"The contention of error is predicated basically upon the theory that it is improper for any argument to be made to the jury upon the matter of any mathematical calculation of pain and suffering on a per diem or similar basis. Continental and Davis refer to and copy extensively from the majority opinion in the case of Botta v. Brunner, 1958, 26 N.J. 82, 138 A.2d 713, summarized at 60 A.L.R.2d 1331, with opinion copied beginning at page 1335, in which the arguments are marshalled against the permitting of plaintiffs' attorney to argue pain and suffering damages on such a basis. The Toombs' attorneys counter with citation and extensive copying from the Rutgers Law Journal (Spring, 1958 issue, pages 522-526), which strongly criticizes the Botta v. Brunner position. Additionally, cases from jurisdictions refusing to honor the principle adopted in that case are referred to as having been annotated in 60 A.L.R.2d at pages 1331-1353, `Per diem or similar mathematical basis for fixing damages for pain and suffering' (at page 1347). They also copy extensively therefrom, beginning at page 1350.
"To abbreviate, we will state that we see nothing improper in arguing a mathematical calculation on the matter of the amount of damages to be awarded for pain and suffering. If it would be error to so argue this phase of a case, it would certainly be error for the jury to use a mathematical calculation in a case where the case was not so argued, but the members of the jury might seize upon the method as a manner in which the damages to be awarded might be calculated. Certainly, any reasoning upon this premise would demonstrate a greater potential harm to have resulted to a defendant in the latter case, for a jury would be at liberty to reject this form of calculation even if made by an attorney while he was arguing plaintiff's case, and it does not necessarily follow that because an attorney argues for the use of such that the jury before whom the argument was delivered actually acted upon the suggestion. We agree that selection of a total pain and suffering damage figure en masse `by guess and by golly' is likely to be lower than a figure calculated by first arriving at an `average per day' damage figure and multiplying it by the number of days established as a period in the evidence. We agree, even, that if no period has been established in the evidence, the jury might be compelled to resort to the `by guess and by golly' method. Nevertheless, the former would seem to be the more reasonable and accurate and more likely to result in a just and proper allowance for this character of damage when the evidence establishes both the period and evidence from which an average daily degree of pain might be inferred, together with a value thereof."
In my judgment a very good statement of the sound and valid reasons which amply *37 sustain and fully justify and render proper the use of a mathematical or per diem formula in connection with the award of damages for pain and suffering are expressed in these words in the concurring opinion of Chief Justice Crockett in Olsen v. Preferred Risk Mutual Insurance Company, 11 Utah 2d 23, 354 P.2d 575, in which a number of the conflicting decisions are referred to and discussed:
"The jury is entitled to base its determination as to any amount awarded for pain and suffering upon the evidence with respect thereto, judged against the background of their experience and practical knowledge in the everyday affairs of life. If the argument has any valid purpose, and we recognize that it has, it is to discuss the issues in the case with them in that light. One of these is the question of the amount of damages the plaintiff may be entitled to for pain and suffering. To say that he could not talk about nor suggest the amount would, for all practical purposes, prevent him from talking about that issue. If he can talk about it at all and mention some gross figure, which it has always been assumed he could do, it would seem no more harmful to invite the jury's attention to a process of analysis and reasoning with respect thereto based upon the time involved and reasonable compensation therefor. This seems more realistic than expecting either counsel or the jury to reach into the air and grab some arbitrary figure without making such analysis."
In Imperial Oil, Limited, v. Drlik, 234 F.2d 4, 6th Circuit, certiorari denied, 352 U.S. 941, 77 S.Ct. 261, 1 L.Ed.2d 236, an award, computed by the trial judge in an admiralty proceeding, for pain and suffering in an amount of $20,400.00 of a total award of $64,950.00, determined by the use of a mathematical or per diem formula, was approved both as to amount and method by the United States Court of Appeals of the Sixth Circuit. In the opinion in that case the court said:
"It remains to be considered whether the method used by the District Judge in determining the total amount was error as a matter of law. It may be that it was a novel one but it does not follow that it invalidates the award. In determining the amount of an award for pain and suffering a juror or judge should necessarily be guided by some reasonable and practical considerations. It should not be a blind guess or the pulling of a figure out of the air. At the same time there is no exact or precise measuring stick. Exact compensation is impossible in the abstract but the juror or judge should endeavor to make a reasonable or sane estimate. The practical considerations influencing a particular juror or judge or the reasoning used by him may very well differ with the method used by another juror or judge, yet each of such different methods or modes of reasoning may be a reasonable method of reaching the desired result. We are more concerned with the result, reached by a reasonable process of reasoning and consistent with the evidence, than we are with which one of several suitable formulas was actually used by the juror or judge. It is not necessary for us to adopt the method used by the District Judge as a rule of law for the proper disposition of such an issue, and we do not do so. In our opinion, it was not an arbitrary or unreasonable approach to the problem presented and its application was so adjusted in the present case as to be consistent with the evidence and to reach a result which does not appear to us to be manifestly unjust. United States v. Puscedu, 5 Cir., 224 F.2d 5; City of Knoxville, Tenn. v. Bailey, 6 Cir., 222 F.2d 520, 531."
The main reasons given in the cases which disallow and reject the use of a mathematical or per diem formula in connection with pain and suffering in the argument of counsel, and particularly in Botta v. Brunner, 26 N.J. 82, 138 A.2d 713, 60 A.L.R.2d 1331, and in Certified T. V. and Appliance Company v. Harrington, 201 Va. *38 109, 109 S.E.2d 126, relied on strongly in the majority opinion, are that the statements of counsel in such argument in effect become testimony; that there is no evidence on which to base such argument because no witness can fix an amount of compensation for pain and suffering; and that such argument is based upon speculation. In my judgment each of these reasons is utterly unsound and fallacious.
The contention that the statements of counsel are in effect testimony or evidence simply ignores reality and would substitute for it a figment of the imagination. Every trial judge knows, as every trial lawyer knows, and every appellate court judge should know, that the statements of counsel in an argument are not evidence but are merely the expression of his individual views, and that jurors almost without exception during the trial of a case are so informed or instructed by counsel and the court. Surely it can not be successfully asserted that the average jury is so stupid as to believe that counsel as a partisan advocate, in arguing the cause of his client, is giving testimony or acting in the capacity of a sworn witness. Jurors observe and know how a person becomes a witness and how he presents sworn evidence in the trial of a case. To say that the statements of counsel are considered as evidence by the jury is a manifest misstatement which distorts the facts.
The contention that such argument of counsel is not based on the evidence, because no witness can testify as to the amount of compensation for pain and suffering is also entirely devoid of merit and substitutes fiction for fact. Generally, and in the case at bar, the existence, the degree and the duration of pain and suffering of the plaintiff are clearly established by competent evidence; and to say that there is no evidence on which to base an inference by counsel as to the amount of compensation which in his opinion the jury should award is also to substitute fiction for fact and to ignore reality. Of course, no witness can express an opinion as to the amount which should be awarded for pain and suffering; but the absence of testimony of that character has nothing to do with the right of counsel to discuss the evidence of pain and suffering and draw and present to the jury his inferences from such evidence. It is just as certain that no witness can testify that in his opinion a defendant is negligent. All he can do is to testify to the facts within his knowledge; and whether a defendant is guilty of negligence is to be determined by the court or the jury as a trier of fact just as the amount of the items of unliquidated damages, despite any statements of counsel, is to be determined by the jury which alone possesses that right. I can not, however, believe that even the authorities which condemn the use in the argument of counsel of a mathematical or per diem formula of ascertaining damages for pain and suffering would consider improper and disapprove argument of counsel in which he gives expression to his inferences from the evidence that the defendant was guilty of negligence or that such authorities would refuse to permit counsel to quote from Shakespeare or the Bible merely because the subject matter of such quotations is not in evidence. Yet, it seems to me that logically such authorities are driven to that absurd extreme. Strange as it may seem, it is nevertheless true that the courts which condemn the use of the mathematical or per diem formula in the argument of counsel, which itemizes the various elements of damages sought to be recovered, except perhaps the courts of New Jersey and Pennsylvania, permit counsel in argument to urge the jury to return a verdict for the damages sued for, including the elements of damages for pain and suffering when established by proof, in an amount which may equal but not exceed the amount sued for, and also permit the jury to be informed, as is customary in this State, by the writ, the pleadings, the instructions of the court or the statements of counsel, of the total amount of damages which the plaintiff seeks to recover. To me this is a strange and illogical anomoly which locates *39 the cart well ahead of the horse. To permit counsel to state the total amount of the damages sought to be recovered, but to forbid him to mention the items or factors which aggregate the total is to sanction a process of determining the aggregate amount without knowing or taking into consideration the figures of which it is composed. So to determine the sum or total in any instance indicates a disregard of the elementary principles of arithmetic which provide that the sum or total is determined by the addition of the various figures which in the aggregate equal its amount; and I know of no other or better method to find the true and actual sum or total in any set of circumstances. To find a sum, without adding together its separate components, is obviously a mathematical and practical impossibility. Just as an attorney may properly draw an inference of negligence from the facts in evidence in a personal injury action, he may also, unless logic is to be utterly disregarded, suggest as a proper inference from the evidence of the existence of pain and suffering, an amount which, in his opinion, would constitute fair and reasonable compensation for that well recognized element of damages. The only relief sought in such an action is a recovery of a sum of money, not a judgment for love and affection or for a cure or for any other type of abstract and intangible as distinguished from concrete or practical relief. To permit a monetary recovery for pain and suffering, as a well recognized element of damages, and at the same time to forbid counsel in argument to evaluate it in terms of money, is to me the height of inconsistency. Logically both should be permitted or both should be forbidden. And yet, under the decisions of this Court pain and suffering are rightfully recognized as a proper and recoverable element of damages.
The contention that the use of a mathematical or per diem formula is purely speculative and should be rejected for that reason is likewise without merit. Most of the courts which take that position permit the use as evidence and in argument of the life expectancy of the claimant as a basis of computation of various elements of damages. In my judgment nothing, not even the mathematical or per diem formula of calculation in exaggerated form, could be more speculative than the life expectancy of a particular person. To assume that a person whose life expectancy is 34.73 years, as shown by the evidence in the case at bar, will continue to live for that period of time and to attempt to calculate damages by the use of such life expectancy, though permitted by the majority in this case, is to me the ultimate in speculation. It is common knowledge that many persons die before the expiration of their life expectancies and that many other persons live much longer than the period of such expectancy. Yet the majority permits the life expectancy of the plaintiff to be introduced in evidence and to be used in connection with the ascertainment of a total award of damages but refuses to permit the use, because speculative, of the mathematical or per diem formula in assisting the jury to arrive at a proper award of damages for the pain and suffering with which she is afflicted and which the negligence of the defendants has caused her to endure. These two conflicting positions do not make sense to me.
The authorities which refuse to permit the use of a mathematical or per diem formula in the argument of counsel in behalf of the plaintiff also give as reasons for its rejection that it is difficult if not impossible for the defendant to answer or rebut it and that such argument operates to produce a verdict which is excessive in amount. These reasons, in my opinion, are utterly groundless and specious in the extreme. If such argument is so strong and effective as to be unanswerable it should not, for that reason, be rejected. To ban a persuasive or prevailing argument, for that reason alone, is to destroy the essential and universally recognized right of counsel to argue the cause of his client; for in every jury trial in which the case is *40 argued by counsel there is an argument which prevails. If the strength of an argument is to become the basis for its rejection the eloquent and unanswerable arguments of a Webster, a Lincoln, a Choate, an Ingersoll or an Erskine were improper and should have been forbidden and, if so forbidden, would never have been uttered. As a matter of fact, however, in many, if not in most instances in which it is made, an argument based upon the use of a mathematical or per diem formula is neither unanswerable nor prejudicial to the rights of the adverse party. In most instances it is based on such extravagant or fantastically impractical figures that it crumbles beneath its own weight. This is in substance conceded by at least one court which refuses to permit its use. Affett v. Milwaukee and Suburban Transport Corporation, 11 Wis.2d 604, 106 N.W.2d 274. In that case the court said: "The absurdity of a mathematical formula is demonstrated by applying it to its logical conclusion. If a day may be used as a unit of time in measuring pain and suffering, there is no logical reason why an hour or a minute or a second could not be used, or perhaps even a heart beat since we live from heart beat to heart beat. If one cent were used for each second of pain, this would amount to $3.60 per hour, to $86.40 per twenty-four-hour day, and to $31,536 per year. The absurdity of such a result must be apparent, yet a penny a second for pain and suffering might not sound unreasonable." The statement "The absurdity of such a result must be apparent, yet a penny a second for pain and suffering might not sound unreasonable" expresses clearly the inherent weakness of an argument based upon a mathematical or per diem formula and at the same time erroneously ignores the intelligence and the common sense of the ordinary jury which can not justly be accused of submitting to an "absurdity" in returning its verdict, overlooks and in effect eliminates the discretion vested in the trial judge to restrain or direct such argument within proper limits, and disregards the presumption that he will properly exercise the discretion with which he is clothed. Moreover, if it should appear from the excessiveness of its verdict that the jury approved the "absurdity" and was fooled and deceived by the "penny a second" sophistry which to my amazement "might not sound unreasonable," the trial judge should, and presumably would, set aside such verdict as excessive, and if he failed to do so, it would be vacated by the appellate court upon review.
Nor does the argument based upon a mathematical or per diem formula necessarily result in the return of an excessive verdict or a verdict for more than the plaintiff is entitled to recover. The jury did not render such a verdict in the case at bar. Its verdict of $11,000.00 is by no one challenged as excessive. That the amount of the verdict was not based upon, controlled by, or unduly influenced or induced by the figures and amounts presented by counsel for the plaintiff in his closing argument which aggregated the clearly exorbitant sum of $47,053.00 for pain and suffering is demonstrated beyond question by the amount awarded which was substantially less than one fourth of the amount which, in the argument, the jury was urged and requested to return. If the amount of the verdict, which is supported by the evidence, was not excessive, and none of the parties contends that it was; and if the argument of counsel for the plaintiff did not prejudice the defendants by inducing the jury to award an excessive amount, and the defendants do not contend that it did but contend instead that an argument of that character is improper and should not be permitted in this jurisdiction and assail such argument on that ground alone, it is clear to me that the judgment should not have been reversed and the verdict should not have been set aside by this Court because of the use of such argument. Even if it was error to permit such argument, the error was harmless which does not warrant reversal of the judgment. State v. Simon, 132 W.Va. 322, *41 52 S.E.2d 725; State v. Rush, 108 W.Va. 254, 150 S.E. 740; State v. Dephenbaugh, 106 W.Va. 289, 145 S.E. 634; State v. Smith, 97 W.Va. 313, 125 S.E. 90; State v. Miller, 85 W.Va. 326, 102 S.E. 303; State v. Lane, 44 W.Va. 730, 29 S.E. 1020.
The use of the mathematical or per diem formula in the argument of counsel for the plaintiff did not intrude upon, invade or violate the peculiar and exclusive province of the jury to assess and determine the amount of the damages, which are unliquidated and indeterminate in character, sought to be recovered by the plaintiff in this case. That it is the peculiar and exclusive province of the jury, in an action for personal injuries, to assess and determine the unliquidated damages for which a recovery is sought, is the firmly established law of this State. Yuncke v. Welker, 128 W.Va. 299, 36 S.E.2d 410. And in this case the jury properly discharged that duty without adopting the figures and the amount urged and requested by counsel for the plaintiff. As indicated by the portion of his argument set forth in the majority opinion counsel, in submitting his figures and amounts, repeatedly told the jury that they merely represented his views of values but that the determination of values was for the jury.
Though as previously indicated, the use of the type of argument of counsel here under consideration has not been specifically considered or passed upon, the decision of the majority not to permit such argument in personal injury cases involving the determination of unliquidated damages, when, as here, it did not influence the jury in arriving at the amount of its verdict or prejudice any right of the defendant, in my opinion, is inconsistent and contrary to a well established principle which has been recognized and adhered to by this Court with respect to the argument of counsel in the trial of cases before a court or a jury. That principle is that counsel has great latitude in argument, subject to regulation and control by the court, and that the trial court has discretion to control, permit and restrain the argument of counsel and to determine the propriety of such argument. 88 C. J.S. Trial § 169. "Counsel may state and comment on all proper inferences from the evidence, and a great variety of particular deductions and inferences have been held proper or not error in the light of the particular facts of the case. Counsel is allowed much latitude in drawing and arguing inferences from the evidence; he may draw conclusions from the evidence on his own system of reasoning, although such inferences as stated by counsel are inconclusive, improbable, illogical, erroneous, or even absurd, unless such conclusions are couched in language transcending the bounds of legitimate argument. * * *." 88 C.J.S. Trial § 181.
In State v. Lewis, 133 W.Va. 584, 57 S.E. 2d 513, this Court, in considering the propriety of the argument of a prosecuting attorney, used this language: "When, however, the statements of a prosecuting attorney are based upon the evidence or his utterances present inferences or conclusions fairly deducible from facts in evidence, or his remarks are provoked by the remarks of counsel for the defendant, his statements are not objectionable or improper. Every remark of a prosecuting attorney is not prejudicially erroneous, and convictions in criminal cases should not be reversed because his remarks may not be entirely justified. A prosecuting attorney is permitted to argue on inferences and to present them with zeal and vigor without undue restriction."; and cited State v. Simon, 132 W.Va. 322, 52 S.E.2d 725; and State v. Greater Huntington Theatre Corporation, 133 W. Va. 252, 55 S.E.2d 681. This Court has repeatedly held that "Counsel necessarily have great latitude in argument before the jury; and the discretion of the trial court in ruling on the propriety of such argument will not be interfered with by the appellate court unless it appears that the rights of the complaining party have been prejudiced, or that manifest injustice resulted therefrom." Point 2, syllabus, Cavender v. The Cline Ice Cream Company, 101 *42 W.Va. 3, 131 S.E. 862. See also State v. Reppert, 132 W.Va. 675, 52 S.E. 820; State v. Simon, 132 W.Va. 322, 52 S.E.2d 725; State v. Boggs, 103 W.Va. 641, 138 S.E. 321; State v. Cooper, 74 W.Va. 472, 82 S.E. 358, Ann.Cas.1917D, 453; State v. Allen, 45 W.Va. 65, 30 S.E. 209; State v. Shores, 31 W.Va. 491, 7 S.E. 413, 13 Am.St. Rep. 875.
In State v. Simon, 132 W.Va. 322, 52 S.E.2d 725, this Court, in the opinion by Judge Fox, said in dealing with the argument of a prosecuting attorney: "We can not put prosecuting attorneys in a straight jacket." Notwithstanding the foregoing quotation which rightfully condemns "a straight jacket" for a prosecuting attorney, the decision of the majority would now seem to require a straight jacket as a necessary article of the courtroom attire of every attorney for the plaintiff during the trial of a personal injury action in which the elements of damages for which a recovery is sought are unliquidated and indeterminate in character.
In my judgment the use of a mathematical or per diem formula in the argument of counsel is proper and, subject to the sound discretion of the trial judge, should be permitted, provided such formula is adequately disclosed in the opening argument of counsel to afford an opportunity to opposition counsel to answer such argument and that the jury is sufficiently informed by cautionary instructions by the court or by statements of counsel that the argument of counsel is not evidence and may not be considered as such by the jury. In brief such argument, as any other argument of counsel, should be under the direction and control of the trial judge in the exercise of his sound judicial discretion which, if abused, is always subject to appellate review. Such argument should be evaluated and dealt with as any other argument of counsel and not condemned, as it is by the majority of this Court, because it constitutes a particular kind or type of argument regardless of its operation and effect.
In my opinion Instruction No. 10 and Instruction No. 11, offered by the defendants, were properly refused.
Instruction No. 10 would have limited any recovery by the plaintiff to the physical condition of which "she now complains.", and would have denied any recovery for the immediate physical injuries, suffered by her, such as bruises and other temporary injuries from which she had undoubtedly recovered before the trial but which were, of course, a proper element of damages. To the extent that it would have precluded any recovery for those injuries, even though the amount may have been slight, the instruction was not based upon the evidence and was erroneous; and the instruction, for the same reason, would have tended to mislead and confuse the jury. This Court has repeatedly held that instructions must be based upon the evidence and that an instruction which is not sustained by evidence should not be given. Wilson v. Edwards, 138 W.Va. 613, 77 S.E.2d 164, and the many cases cited in the opinion in that case. An instruction which ignores material evidence is erroneous and is properly refused. Parkersburg National Bank v. Hannaman, 63 W.Va. 358, 60 S.E. 242; Delmar Oil Company v. Bartlett, 62 W.Va. 700, 59 S.E. 634; Johnson v. Bank, 60 W.Va. 320, 55 S.E. 394, 9 Ann.Cas. 893; Robinson v. Lowe, 50 W.Va. 75, 40 S.E. 454. This Court has also held in many cases that an instruction which tends to mislead the jury is erroneous and should be refused. Wilson v. Edwards, 138 W.Va. 613, 77 S.E.2d 164, and the many cases cited in the opinion in that case.
Instruction No. 11 would have told the jury that the plaintiff could only recover for damages which were shown by the evidence with "reasonable certainty" to be the "direct result" of the accident. That provision of the instruction departs from and conflicts with the recognized requirement that the plaintiff, to recover, must prove by a preponderance of the evidence that the damages were proximately caused by the *43 negligence of the defendant. The form of the instruction would also have tended to mislead and confuse the jury. For these reasons the instruction was properly refused.
For the reasons stated and under the authorities cited and quoted from in this opinion, I would affirm the judgment of the Circuit Court of Kanawha County and the judgment of the Court of Common Pleas of that county.
I am authorized to state that Judge BROWNING concurs in the views expressed in this dissenting opinion.